## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DAVID SCHWERDTFEGER, | ) | Case No. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| JOHNSON CONTROLS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

COMES NOW the Plaintiff David Schwerdtfeger ("Plaintiff"), and for his Complaint against Defendant Johnson Controls, Inc. ("Defendant"), states and alleges as follows:

### THE PARTIES

1.      Plaintiff is a resident of Lincoln, Lancaster County, Nebraska.

2.      Defendant is a control systems company organized and existing under the laws of the State of Milwaukee, Wisconsin, with its principal place of business in Milwaukee, Wisconsin.

### JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because Plaintiff and the Defendant are citizens of different states, and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), as Defendant has threatened suit over a non-solicitation clause described below, and claimed $1,400,000.00 in damages.

4.      This Court has personal jurisdiction over Defendant because Defendant systematically and continuously conducts business in this State, and otherwise has minimum contacts with this State sufficient to establish personal jurisdiction over it.

5.      Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred within this judicial district.

## **FACTUAL ALLEGATIONS**

6.     Plaintiff was employed by Defendant beginning on or about August 29, 2019.

7.     Plaintiff was employed at Defendant's Lincoln, Nebraska offices.

8.     During Plaintiff's employment, Plaintiff signed two nearly identical offer letters, dated August 29, 2019, and October 27, 2020. True and correct copies of the offer letters are attached as Exhibit "A" and incorporated by reference.

9.     Both offer letters contain an identical non-solicitation clause which states as follows:

> Employee agrees that for one (1) year period following the Date of Termination, or such longer period of non-solicitation as is included in any offer letter, equity agreement or any other agreement between Employee and the Company or its parent, subsidiaries, or affiliates, Employee will not directly or indirectly on behalf of Employee or on behalf of another (i) solicit, recruit, aid or induce employees of the Company (a) with whom Employee has had material contact within the course of Employee's employment during the twelve (12) month period preceding Employee's Date of Termination and had access to Confidential Information, trade secrets or customer relationships; or (b) who were directly managed by or reported to Employee as of Employee's Date of Termination to leave their employment with the Company in order to accept employment with or render services to or with another person or entity unaffiliated with the Company, or hire or knowingly take any action to assist or aid any other person or entity in identifying or hiring any such employee, or (ii) solicit, aid, or induce any customer of the Company with whom Employee had material contact during the twenty-four (24) month period immediately preceding Employee's Date of Termination to purchase goods or services then sold by the Company from another person or entity, or assist or aid any other person or entity in identifying or soliciting any such customer, or (iii) otherwise interfere with the relationship of the Company with any of its employees, customers, vendors, agents, or representatives.

(the "Non-Solicit Clause").

10.     Plaintiff left his position with Defendant on or about March 15, 2024.

11.     Plaintiff began employment with his new employer, Prairie Mechanical Corporation ("Prairie Mechanical"), in March 2024.

12.     Prairie Mechanical is a mechanical contractor that specializes in HVAC service and installation located in Omaha, Nebraska.

13.     Prairie Mechanical does work for clients across the state of Nebraska.

14.     Beatrice Public Schools ("Beatrice"), one of Defendant's clients, issued a Request for Proposal ("RFP") for HVAC work and maintenance.

15.     Defendant and Prairie both participated in the RFP and Prairie Mechanical was awarded the contract for HVAC work and maintenance.

16.     Defendant maintains contracts with Beatrice for other services, including control services.

17.     Several of Defendant's other customers have called Plaintiff, requesting that Prairie Mechanical service their businesses.

18.     As part of Plaintiff's employment as an account manager with Prairie Mechanical, Plaintiff has solicited and would like to continue to solicit customers in Lincoln, Nebraska, including customers with whom Plaintiff had contract with while employed by Defendant.

19.     Since Plaintiff has left employment with Defendant, there have been two occasions in which employees of Defendant have called Prairie Mechanical, requesting Prairie Mechanical's assistance with two of Defendant's projects. On one of those occasions, an employee of Defendant called Plaintiff directly asking Plaintiff, and Prairie Mechanical, to assist in performing services for Defendant. Both of these projects are for customers of Defendant's with whom Plaintiff did business and had personal contact while employed by Defendant.

## <u>COUNT I – REQUEST FOR DECLARATORY RELIEF</u>
### 28 U.S.C. § 2201

20.    Plaintiff incorporates the allegations in the previous paragraphs 1-19 of this Complaint as fully set forth herein.

21.    The Non-solicit Clause set forth in the offer letters attempts to prevent Plaintiff from interfering with any of Defendant's customers, regardless of if Plaintiff did business or had any personal contact with the customer.

22.    The Non-solicit Clause set forth in the offer letters signed by Plaintiff is unenforceable by Defendant because it prevents solicitation of customers with whom Plaintiff had "material contact", a term not defined by the offer letters. Further, the final phrase of the Non-solicit Clause attempts to restrict Plaintiff from "interfer[ing] with the relationship of the Company with any of its … customers, vendors, agents, or representatives," regardless of whether Plaintiff had personal contact and actually did business with them.

23.    Defendant has asserted its intention to enforce the Non-solicit Clause against Plaintiff through a letter dated July 30, 2024. A true and correct copy of the letter is attached as Exhibit "B" and incorporated by reference.

24.    On August 6, 2024, Plaintiff responded to Defendant's letter, outlining Plaintiff's position regarding the enforceability of the Non-solicit Clause. A true and correct copy of the letter is attached as Exhibit "C" and incorporated by reference.

25.    On September 6, 2024, Defendant once again asserted its intention to enforce the Non-Solicit Clause against Plaintiff, claiming $1,400,000.00 in damages.  A true and correct copy of the letter is attached as Exhibit "D" and incorporated by reference.

4

26.     Defendant contends that customers with whom Plaintiff had "material contact" are equivalent to customers with whom Plaintiff "did business with and had personal contact". Plaintiff contends that "material contact" is undefined and does not accurately describe the type of contact with customers required for a valid non-solicitation agreement under Nebraska law.

27.     Plaintiff further contends that the final phrase of the Non-solicit Clause is overbroad and does not restrict the Non-solicit Clause to those customers with whom Plaintiff "did business with and had personal contact". Defendant contends this final phrase is generally enforceable.

28.     The legality of the Non-solicit Clause is a justiciable controversy between Plaintiff and Defendant which this Court can and should adjudicate.

29.     Plaintiff is entitled to injunctive relief to prevent the enforcement of the Non-solicit Clause because enforcement of the Non-solicit Clause by Defendant would result in irreparable harm to Plaintiff for which Plaintiff has no adequate legal remedy.

WHEREFORE, Plaintiff prays for the following relief:

a.   An Order finding and decreeing that the Non-solicit Clause is void and unenforceable;

b.   A preliminary injunction which enjoins Defendant from attempting to enforce the terms of the Non-solicit Clause during the pendency of this action;

c.   A permanent injunction enjoining Defendant from attempting to enforce the terms of the Non-solicit Clause against Plaintiff; and

d.   Such other and further relief as this Court may allow.

## REQUEST FOR PLACE OF TRIAL

Plaintiff hereby requests that the trial of this case be in Lincoln, Nebraska.

DATED this 12th day of September, 2024.

DAVID SCHWERDTFEGER, Plaintiff

By: s/Patrick M. Flood
Patrick M. Flood, #19042
William Beerman, #26544
PANSING HOGAN ERNST & BUSER LLP
10250 Regency Circle, Suite 300
Omaha, NE 68114
Phone: (402) 397-5500
pflood@pheblaw.com
wbeerman@pheblaw.com
*Attorneys for Plaintiff*

9/9/2019                                    Johnson Controls -



Mandatory fields are marked with a red indicator.
Offer



August 29, 2019

David W. Schwerdtfeger
1937 N 60 th
Lincoln, Nebraska 68505

Dear David:

We are delighted to offer you the position of Account Executive Owner Sales for Johnson Controls Inc., a subsidiary or affiliate of Johnson Controls (the "Company"), reporting directly to Jeffrey A Schomberg. This position will be located in Omaha, Nebraska.

## Start Date
Your start date has been tentatively scheduled for September 23, 2019. This date is subject to change based on when the completed background information is received and if there is a period where you must give an employer a leave notice.

## Base Salary
You will receive an annual base salary of $80,000.00. Your salary will be paid according to the normal and customary payroll process of the Company.

## Commission Plan
You will be eligible to receive commissions as outlined in our plan named BSNA Owner Sales Acct Exec HVAC. Your supervisor will provide a copy of this plan to you and answer any questions you may have. Management may at its sole discretion revise the BSNA Owner Sales Acct Exec HVAC at any time with or without notice.

## Guarantee
For the first 6 months of your employment, we are offering you a $20,000.00 incentive guarantee, to be paid in monthly payments of $3,333.33 per month, less applicable statutory deductions. This incentive guarantee represents the minimum amount for your incentive payment; in the event that the amount of your earned incentive payment (as calculated under the Incentive Plan) exceeds $3,333.33 in any month, or $20,000 total incentive payment in the first 6 months of employment, the guarantee will no longer apply. The on-going payment of this incentive guarantee will be contingent upon your continued satisfactory performance against established goals.

## Company Non-Decaled Vehicle
You are being offered a position which is eligible to use a non-decaled Company vehicle. Your eligibility to participate in the non-decaled Fleet Program is conditional upon you demonstrating that your driving record over the past thirty six (36) months satisfies the Company requirements. Please note that certain types of serious motor vehicle infractions will disqualify you for employment with the Company in a "driving position". Consequently, you are hereby required to authorize the Company to obtain your driver's history information to determine your eligibility to operate a motor vehicle

9/9/2019                                          Johnson Controls -

while on Company business.

If you meet the Company requirements and are hired, you will be required to maintain a valid driver's license as a condition of your ongoing employment. You will also be required to periodically provide updates to your driver's history to allow the Company to confirm your ongoing eligibility to operate a motor vehicle while on Company business.

In the event that the Company provides you with a non-decaled Company vehicle, you agree that the Company may deduct from your salary the applicable monthly personal usage fee in an amount to be determined by the Company. In states/provinces where payroll deduction is not permitted, you agree to submit your personal credit card to a 3rd party to allow for Personal Usage Charges (PUC) to be deducted.

In order to continue to be eligible for a Company vehicle, you must drive more than the annual business miles/kilometers required, as set out in the Company's applicable plans and policies as in effect from time-to-time. If you do not meet minimum annual business mile/kilometer requirements, the Company reserves the right to remove the Company vehicle and you can expense business miles/kilometers through expense reporting systems, not to exceed the annual minimum business miles/kilometers. Please note, minimum mileage requirements may be modified at any time, with or without notice, at the sole discretion of the Company.

Your use of the Company vehicle remains subject to the Company's applicable plans and policies as in effect from time-to-time.

Benefits
You will be eligible for all employee benefits that the company customarily makes available to employees in positions comparable to yours. The specific benefits available to you, and the eligibility requirements for such benefits, are governed by the terms and conditions of the applicable plan documents. Employee contributions may be required to participate in certain plans and programs. More information regarding the benefit plans and programs will be provided to you prior to your benefit enrollment period. The Company reserves the right to modify, supplement or cancel its benefits program at any time, without notice or other obligation.

Vacation
Per Company policy, you will be eligible for 15 vacation Days per calendar year. The amount of vacation you will be eligible for in 2019 will be dependent on your start date and pro-rated accordingly. The use of such vacation is subject to the terms and conditions of the Company's vacation policy in effect at any given time.

Non-Solicit
Employee agrees that for the one (1) year period following the Date of Termination, or such longer period of non-solicitation as is included in any offer letter, equity agreement or any other agreement between Employee and the Company or its parent, subsidiaries or affiliates, Employee will not directly or indirectly on behalf of Employee or on behalf of another (i) solicit, recruit, aid or induce employees of the Company (a) with whom Employee has had material contact within the course of Employee's employment during the twelve (12) month period preceding Employee's Date of Termination and had access to Confidential Information, trade secrets or customer relationships; or (b) who were directly managed by or reported to Employee as of the Employee's Date of Termination to leave their employment with the Company in order to accept employment with or render services to or with another person or entity unaffiliated with the Company, or hire or knowingly take any action to assist or aid any other person or entity in identifying or hiring any such employee, or (ii) solicit, aid, or induce any customer of the Company with whom Employee had material contact during the twenty-four (24) month period immediately preceding Employee's Date of Termination to purchase goods or services then sold by the Company from another person or entity, or assist or aid any other persons or entity in identifying or soliciting any such customer, or (iii) otherwise interfere with the relationship of the Company with any of its employees, customers, vendors, agents, or representatives.

Irreparable injury will result to the Company, its business, and its parent, subsidiaries or affiliates in the event of a breach by you of any of your covenants and commitments you have accepted as a condition of this employment offer, including the covenants of non-solicitation. Therefore, in the event of a breach of such covenants and commitments, the Company reserves all rights to seek any and all remedies and damages permitted under law, including, but not limited to, injunctive relief, equitable relief and compensatory damages.

9/9/2019                                                    Johnson Controls -

injunctive relief, equitable relief and compensatory damages.

The non-solicitation provisions are expressly intended to benefit the Company (which includes its parents, subsidiaries and/or affiliates as third party beneficiaries) and its successors and assigns; and the parties expressly authorize the Company (including all third party beneficiaries) and its successors and assigns to enforce these provisions.

Conditions of Employment

Please be advised that notwithstanding anything in this offer letter to the contrary, neither this letter nor any statement made by the Company or its parent, subsidiaries or affiliates is intended to be a contract of employment for a definite period of time. That means that the employment relationship established by this letter is "at will" and either you or the Company may terminate the employment relationship at any time and for any reason, with or without cause or notice. Further, the Company may from time to time, and in its sole discretion, change the terms and conditions of your employment and benefits, with or without notice, and all payments are subject to applicable taxes and other deductions required or permitted by law.

Your employment will be conditioned upon your execution of this letter, and execution of and ongoing compliance with the terms of (1) the Company's Code of Ethics, Values First and (2) any conditional documents, including a Non-Compete, Non-Solicit, Confidentiality and/or other Restrictive Covenants that are presented with this offer.

In addition, the conditions of this letter are contingent upon the completion of a drug test, background check, and in some cases fingerprinting to meet State Security Alarm Company licensing requirements. You will also be required to complete the employee portion of the documentation (Form I-9) on your first day to satisfy the legal requirements under federal immigration laws of identifying that you have the unrestricted legal authority to work in the United States.

David, I am excited about the possibility of you joining our team, where we can work together to create a world that's safe, comfortable and sustainable. Should you have any questions with regard to any of the items indicated above, please email Pamela Ertl at pamela.ertl-ext@jci.com, who will be happy to assist you.

Sincerely,

Jeffrey A Schomberg
Johnson Controls

Offer Letter Attachments

—

*Provide your offer response
Accept the offer

*Provide your e-signature by entering your Last Name in the space below.
******

Signed by

David W. Schwerdtfeger

Signed on
9/9/19

Captured from IP Address
104.91.167.86

10/28/2020                          Johnson Controls -

Mandatory fields are marked with a red indicator.
Offer



October 27, 2020

Dave Schwerdtfeger

Dear Dave:

We are delighted to offer you the position of Account Executive Owner for Johnson Controls Inc., a subsidiary or affiliate of Johnson Controls (the "Company"), reporting directly to Trent Dowling. This position will be located in Lincoln, NE.

## Start Date
Upon acceptance of this new position, your start date has been tentatively scheduled for November 1, 2020. This transition date is subject to change based upon the needs of your new Manager and departing Manager.

## Base Salary
You will receive an annual base salary of $80,000.18. Your salary will be paid according to the normal and customary payroll process of the Company.

## Commission Plan
You will be eligible to receive commissions as outlined in our plan named SIP BSNA HVAC Owner Sales Acct Exec (SC04). Your supervisor will provide a copy of this plan to you and answer any questions you may have. Management may at its sole discretion revise the SIP BSNA HVAC Owner Sales Acct Exec (SC04) at any time with or without notice.

## Company Non-Decaled Vehicle
You are being offered a position which is eligible to use a non-decaled Company vehicle. Your eligibility to participate in the non-decaled Fleet Program is conditional upon you demonstrating that your driving record over the past thirty six (36) months satisfies the Company requirements. Please note that certain types of serious motor vehicle infractions will disqualify you for employment with the Company in a "driving position". Consequently, you are hereby required to authorize the Company to obtain your driver's history information to determine your eligibility to operate a motor vehicle while on Company business.

If you meet the Company requirements and are hired, you will be required to maintain a valid driver's license as a condition of your ongoing employment. You will also be required to periodically provide updates to your driver's history to allow the Company to confirm your ongoing eligibility to operate a motor vehicle while on Company business.

In the event that the Company provides you with a non-decaled Company vehicle, you agree that the Company may deduct from your salary the applicable monthly personal usage fee in an amount to be determined by the Company. In states/provinces where payroll deduction is not permitted, you agree to submit your personal credit card to a 3rd party to allow for Personal Usage Charges (PUC) to be deducted.

In order to continue to be eligible for a Company vehicle, you must drive more than the annual business miles/kilometers required, as set out in the Company's applicable plans and policies as in effect from time-to-time. If you do not meet minimum annual business mile/kilometer requirements, the Company reserves the right to remove the Company vehicle and you can expense business miles/kilometers through expense reporting systems, not to exceed the annual minimum business miles/kilometers. Please note, minimum mileage requirements may be modified at any time, with or without notice, at the sole discretion of the Company.

Your use of the Company vehicle remains subject to the Company's applicable plans and policies as in effect from time-to-time.

## Benefits

You will continue to be eligible for all employee benefits that the company customarily makes available to employees in positions comparable to yours.  The specific benefits available to you, and the eligibility requirements for such benefits, are governed by the terms and conditions of the applicable plan documents.  Employee contributions may be required to participate in certain plans and programs.  The Company reserves the right to modify, supplement or cancel its benefits program at any time, without notice or other obligation.

## Non-Solicit

Employee agrees that for the one (1) year period following the Date of Termination, or such longer period of non-solicitation as is included in any offer letter, equity agreement or any other agreement between Employee and the Company or its parent, subsidiaries or affiliates, Employee will not directly or indirectly on behalf of Employee or on behalf of another (i) solicit, recruit, aid or induce employees of the Company (a) with whom Employee has had material contact within the course of Employee's employment during the twelve (12) month period preceding Employee's Date of Termination and had access to Confidential Information, trade secrets or customer relationships; or (b) who were directly managed by or reported to Employee as of the Employee's Date of Termination to leave their employment with the Company in order to accept employment with or render services to or with another person or entity unaffiliated with the Company, or hire or knowingly take any action to assist or aid any other person or entity in identifying or hiring any such employee, or (ii) solicit, aid, or induce any customer of the Company with whom Employee had material contact during the twenty-four (24) month period immediately preceding Employee's Date of Termination to purchase goods or services then sold by the Company from another person or entity, or assist or aid any other persons or entity in identifying or soliciting any such customer, or (iii) otherwise interfere with the relationship of the Company with any of its employees, customers, vendors, agents, or representatives.

Irreparable injury will result to the Company, its business, and its parent, subsidiaries or affiliates in the event of a breach by you of any of your covenants and commitments you have accepted as a condition of this employment offer, including the covenants of non-solicitation. Therefore, in the event of a breach of such covenants and commitments, the Company reserves all rights to seek any and all remedies and damages permitted under law, including, but not limited to, injunctive relief, equitable relief and compensatory damages.

The non-solicitation provisions are expressly intended to benefit the Company (which includes its

10/28/2020                                                Johnson Controls -

parents, subsidiaries and/or affiliates as third party beneficiaries) and its successors and assigns; and the parties expressly authorize the Company (including all third party beneficiaries) and its successors and assigns to enforce these provisions.

<u>Conditions of Employment</u>
Please be advised that notwithstanding anything in this offer letter to the contrary, neither this letter nor any statement made by the Company or its parent, subsidiaries or affiliates is intended to be a contract of employment for a definite period of time. That means that the employment relationship established by this letter is "at will" and either you or the Company may terminate the employment relationship at any time and for any reason, with or without cause or notice. Further, the Company may from time to time, and in its sole discretion, change the terms and conditions of your employment and benefits, with or without notice, and all payments are subject to applicable taxes and other deductions required or permitted by law.

This offer of a new position is conditioned upon your execution of this letter.

Dave, I am excited about this new opportunity for you, where we can continue to create a world that's safe, comfortable and sustainable. Should you have any questions with regard to any of the items indicated above, please email Danielle Sepe at danielle.sepe@jci.com, who will be happy to assist you.

Sincerely,
Trent Dowling
Johnson Controls


Offer Letter Attachments
—

*Provide your offer response
Accept the offer

*Provide your e-signature by entering your Last Name in the space below.
******

Signed by

Dave W Schwerdtfeger

Signed on
10/27/20

Captured from IP Address
23.198.5.166

EXHIBIT

"B"

**Johnson Controls**

Michael Furlong
Legal Director, Global Labor & Employment Law
Johnson Controls
5757 North Green Bay Avenue  Milwaukee, WI 53209
224-659-0456  michael.furlong@jci.com

July 30, 2024

Mr. Dave Schwerdtfeger                              <u>VIA EMAIL DELIVERY</u>
dldcgs@gmail.com
dschwerdtfeger@prairiemech.com

     Re:    Post Employment Obligations to Johnson Controls

Mr. Schwerdtfeger:

     As you know your employment with Johnson Controls ('the "Company") ended on or about March 15, 2024.  As a condition of your employment, you voluntarily signed various agreements, including non-solicitation agreements, making certain commitments to the Company throughout your employment and, in some cases, continuing after employment.  This letter is to remind you of those restrictions and your actions that may violate these agreements.

     Pursuant to the Non-Solicitation terms that you agreed to, you are restricted, for one year following the date of your termination, (1) from soliciting, recruiting, aiding, or inducing any customer of Johnson Controls with whom you had material contact during the 24-month period immediately preceding your date of termination to purchase goods or services then sold by Johnson Controls from another person or entity, or assist or aid any other persons or entity in identifying or soliciting any such customer, or (2) to otherwise interfere with the relationship of Johnson Controls with any of its customers.

     Since your employment ended with Johnson Controls, the Company learned that you have secured employment with a competitor of Johnson Controls and contacted Johnson Controls' customers in effort to solicit business. Specifically, Johnson Controls employees observed you on the premises of Johnson Controls' customers (including but not limited to, Beatrice Schools and Wesleyan University) soliciting business from these customers on behalf of your new employer, Prairie Mechanical. Further, Johnson Controls understands that you have submitted work proposals to customers that you worked with while employed by Johnson Controls. Such contacts and solicitation efforts violate your restrictive covenant obligations to Johnson Controls. <u>You must immediately cease these customer solicitation efforts</u>.

     <u>**You are hereby instructed to cease and desist from any present and/or future violations of the restrictive covenants contained in your agreements with Johnson Controls, including, but not limited to, your solicitation of Johnson Controls customers.**</u> Our investigation into this matter and our evaluation of any legal action against both you and your new employer is ongoing.  Because your activities on behalf of your new employer could expose them to liability, we strongly encourage you to discuss this letter with them (copied on this letter).

     As you have now been put on notice of potential legal action against you, you have a legal duty to preserve all potentially relevant evidence in your possession.  This includes, but is not limited to, all electronically stored information, such as emails, telephone records, text messages,

Mr. Dave Schwerdtfeger
July 30, 2024
Page 2

Word documents, Excel spreadsheets, PDFs, etc., on both your professional IT equipment at your employ with your new employer, as well as any of your personal equipment that may contain such information. Please note that your personal and professional equipment may be subject to a forensic examination should the Company pursue legal action against you.

Finally, nothing in this letter should be construed as waiving Johnson Controls' right to take immediate action against you, and possibly your new employer, based on information known to date or learned subsequently. We are still reviewing the evidence and deciding whether circumstances warrant further action. Notwithstanding, at a minimum, it remains the Company's expectation that you will follow through with your obligations from this point forward.

If you are represented by an attorney, please provide this correspondence to your attorney and ask him/her to contact me.

Thank you,

Michael Furlong
Legal Director, Global Labor and Employment Law

cc:     Pat Kealy, Owner/President
        Prairie Mechanical Corp.
        pkealy@prairiemech.com





William N. Beerman
Maggie L. Brokaw
James D. Buser*
Benjamin C. Deaver*
Jeffrey A. Deaver*
David D. Ernst*
Patrick M. Flood*
Dennis P. Hogan, III
Mark J. LaPuzza
Lisa M. Meyer*
Emily F. Mordhorst
Kellie Chesire Olson
Matthew T. Payne

Benjamin J. Pick*
Helen E. Russell
Jessica E. Thomas*
David L. Welch*
McKinley W. Wilson

Of Counsel
Edward D. Hotz
Thomas R. Pansing, Jr.

Harry B. Otis (1920-
2003)

*Also Admitted In Iowa

10250 Regency Circle, Suite 300
Omaha, Nebraska 68114-3728
Telephone (402) 397-5500
Fax (402) 397-4853
www.pheblaw.com

Email: pflood@pheblaw.com

August 6, 2024

**via email – michael.furlong@jci.com**

Michael Furlong
Legal Director, Global Labor and Employment Law
Johnson Controls
5757 North Green Bay Avenue
Milwaukee, WI 53209

Re:     Dave Schwerdtfeger/Johnson Controls/Prairie Mechanical Corporation

Dear Mr. Furlong:

I forwarded those offer letters to Dave Schwerdtfeger, and he does not recall signing the offer letters.  Do you have evidence that they were signed or electronically signed?  If so, I would appreciate it if you could send me signed copies.

But, even if they were signed by Mr. Schwerdtfeger, it is clear that Johnson Controls' prohibitions on the non-solicitation of customers are not enforceable under Nebraska law.  Under Nebraska law, a covenant not to compete in an employment contract is only valid if it restricts the former employee from working for or soliciting customers "with whom the former employee actually did business and has personal contact."  *Mertz v. Pharmacists Mut. Ins. Co*, 261 Neb. 704, 712, 625 N.W.2d 197, 204-205 (2001) (other citations omitted); and *Polly v. Ray D. Hilderman & Co.*, 225 Neb. 662, 667, 407 N.W.2d 751, 756 (1987).

Johnson Controls' provisions purport to prohibit Mr. Schwerdtfeger from soliciting customers with whom he has had "material contact" (a term not defined), regardless of whether he actually did business with them or had personal contact with them.  Further, Johnson Controls' provisions purport to prohibit Mr. Schwerdtfeger from interfering with its relationships with *any* of its customers, regardless of whether he actually did business and had personal contact with them.  For

4:24-cv-03165-JMG-RCC     Doc # 1     Filed: 09/12/24     Page 16 of 19 - Page ID # 16

August 6, 2024
Page 2

those reasons, Johnson Controls' non-solicitation provisions as they relate to customers are unenforceable. Unlike other states, Nebraska will not "blue-pencil" noncompete provisions in order to make them valid. *CAE Vanguard, Inc. v. Newman*, 246 Neb. 334, 338, 518 N.W.2d 652, 656 (1994).

Prairie Mechanical will permit Mr. Schwerdtfeger to solicit and service whatever customers he wants to in Nebraska, because he is not bound by any lawful restrictions.

If you have any further questions about this, please do not hesitate to contact me.


Very truly yours,


Patrick M. Flood

PMF/dkh
cc:     Patrick Kealy
        Dave Schwerdtfeger



Michael Furlong
Legal Director, Global Labor & Employment Law
Johnson Controls
5757 North Green Bay Avenue  Milwaukee, WI 53209
224-659-0456  michael.furlong@jci.com

September 6, 2024

**Via Email**
Patrick Flood
pflood@pheblaw.com

    Re:  **Dave Schwerdtfeger's Restrictive Covenants to Johnson Controls**

Mr. Flood:

    I am writing to follow up on my July 30, 2023 correspondence to Dave Schwerdtfeger and Prairie Mechanical Corp. ("Prairie") and Prairie's response on August 6, 2024. In my July 30, 2023 letter on behalf of Johnson Controls, Inc., I stated that Johnson Controls is aware of Mr. Schwerdtfeger's solicitations of at least two Johnson Controls customers (Beatrice Schools ("Beatrice") and Nebraska Wesleyan University ("Wesleyan")) in violation of his restrictive covenants to Johnson Controls. In response, Prairie did not deny that Mr. Schwerdtfeger solicited these customers, but only stated that Prairie does not believe that Mr. Schwerdtfeger's non-solicitation restriction is enforceable under Nebraska law.

    Johnson Controls disagrees with your position on the law. Johnson Controls' restriction on Mr. Schwerdtfeger's ability to solicit customers with whom he had "material contact" during the 24 months preceding his separation from Johnson Controls falls squarely within the parameters of Nebraska law. Those customers (including Beatrice and Wesleyan) with whom Mr. Schwerdtfeger had "material contact" while working for Johnson Controls are those in which he "actually did business and had personal contact." These idioms are indistinguishable in this context.

    Until the date of his exit with Johnson Controls, Mr. Schwerdtfeger worked as the account sales representative for Beatrice and Wesleyan. In this role, Johnson Controls assigned Mr. Schwerdtfeger to be the primary contact person for Beatrice and Wesleyan, responsible for maintaining and enhancing the Company's long-standing relationship with these two customers. Among other responsibilities, Mr. Schwerdtfeger served as the main point of contact for purchase and sale agreements and service quotes. Mr. Schwerdtfeger often served as Beatrice and Wesleyan's first point of contact for any issues or questions regarding the services provided by Johnson Controls. Mr. Schwerdtfeger likely spoke to these customers on at least a weekly basis. He fostered this close business relationship and maintained these personal contacts with Beatrice and Wesleyan since the start of his employment with Johnson Controls and until his last day.

    To assess whether a former employee has committed impermissible personal contacts, Nebraska courts evaluate whether the employee developed goodwill with customers through personal contacts and repurposed the goodwill for themselves or a new employer. *Polly v. Ray D.*

September 6, 2024
Page 2

*Hilderman Co.,* 225 Neb. 662, 665-66 (Neb. 1987). "Where an employee has substantial personal contact with the employer's customers, develops goodwill with such customers, and siphons away the goodwill under circumstances where the goodwill properly belongs to the employer, the employee's resultant competition is unfair, and the employer has a legitimate need for protection against the employee's competition." *Id.*

Johnson Controls seeks to restrict exactly those contacts protected and enforceable under Nebraska law. Until Mr. Schwerdtfeger's unlawful interference with these relationships, Beatrice had been a Johnson Controls' customer for over 25 years and Wesleyan was a Johnson Controls customer since at least 2014. Both relationships pre-dated Mr. Schwerdtfeger's employment with Johnson Controls. Mr. Schwerdtfeger engaged in ongoing personal contact with Beatrice and Wesleyan since the start of his employment with Johnson Controls through which he developed goodwill with these customers. He then siphoned away this goodwill shortly after he started working for Prairie.

The plain language of the non-solicitation covenant and Mr. Schwerdtfeger's extensive personal contacts with Beatrice and Wesleyan during his employment with Johnson Controls demonstrate that his non-solicitation restrictions are enforceable. The non-solicitation covenant's enforceability is dispositive because neither Prairie nor Mr. Schwerdtfeger disputed Johnson Controls' factual allegations regarding his solicitations of these customers since joining Prairie. Mr. Schwerdtfeger solicited and induced Beatrice and Wesleyan to sever their relationship with Johnson Controls and procure services from Prairie. Nebraska law allows enforcement of non-solicitation agreements to protect against exactly this nature of interference with a company's relationship and goodwill with its customers.

When presented with the fact that Mr. Schwerdtfeger solicited these customers in violation of his covenants to Johnson Controls, Prairie responded that it "will permit Mr. Schwerdtfeger to solicit and service whatever customer he wants to in Nebraska." By acting in concert with Mr. Schwerdtfeger and encouraging him to break his contractual obligations to Johnson Controls, Prairie is liable to Johnson Controls for tortiously interfering with Johnson Controls' business and contractual relationships. Accordingly, Johnson Controls hereby demands that by no later than **September 13, 2024,** Prairie complies with the following:

- Immediately cease and desist from soliciting or providing services to any customer who Mr. Schwerdtfeger materially contacted in his role with Johnson Controls during the 24-month period prior to March 15, 2024.

- Compensate Johnson Controls for its recoverable compensatory damages in the amount of $1,400,000.00. This figure represents Johnson Controls' damages as a result of expected five years of lost revenue from Beatrice and Wesleyan ($180,000 annual revenue from Beatrice and $100,000 annual revenue from Wesleyan).

- Provide written assurance that, for a period of one year following Mr. Schwerdtfeger's termination date (March 15, 2024), Prairie and Mr. Schwerdtfeger will refrain from soliciting, recruiting, aiding, or inducing any customer of Johnson Controls with whom Mr. Schwerdtfeger had material contact during the 24-month period immediately preceding his

September 6, 2024
Page 3

     date of termination to purchase goods or services then sold by Johnson Controls from Prairie.

- Identify, in writing, every restricted customer with whom Mr. Schwerdtfeger has communicated with since Mr. Schwerdtfeger's departure from Johnson Controls.

- Identify, in writing, all documents (whether electronic or hard copy) or things in either Mr. Schwerdtfeger and/or Prairie's possession, custody, or control that contain or relate to Johnson Controls' confidential information. If either Prairie or Mr. Schwerdtfeger are physically in the possession of tangible items that contain or relate to Johnson Controls' Confidential Information, you return all such items to Johnson Controls.

     Please be advised that should you fail to comply with these demands, Johnson Controls is prepared to enforce its rights. Although Johnson Controls would like to avoid litigation in this matter, such litigation is reasonably anticipated at this time. Therefore, I reiterate the direction in my July 30, 2024 correspondence that you must preserve all potentially relevant evidence in your possession. You must preserve, and not delete or destroy, any and all documents, communications, emails, text messages, recordings, and any and all other written material, whether electronic or in hard copy, relating to Johnson Controls or its current or former customers.

     JCI expressly reserves any and all rights and remedies afforded to it by contract, under statute, at law, or in equity, and nothing herein is intended to waive any such rights.

Thank you,

Michael Furlong
Legal Director, Global Labor and Employment Law