IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DAVID SCHWERDTFEGER,<br><br>               Plaintiff,<br><br>vs.<br><br>JOHNSON CONTROLS, INC.,<br><br>               Defendant. | 4:24-CV-3165<br><br>MEMORANDUM AND ORDER |

The plaintiff, David Schwerdtfeger, is seeking declaratory and injunctive relief regarding a non-solicitation clause in his employment contract with his former employer, the defendant, Johnson Controls, Inc. *See* filing 1 at 5. This matter is before the Court on the plaintiff's motion for a preliminary injunction. Filing 5. The motion will be denied.

## I. BACKGROUND

The plaintiff is in the business of HVAC service and installation in Nebraska. *See* filing 1 at 3. He worked for Johnson Controls from August 2019 until March 2024. *See* filing 1 at 2. When he resigned, he was as an Account Executive Owner. *See* filing 13-3. The plaintiff's employment was subject to a non-solicitation clause, which states, as relevant to this dispute:

> Employee agrees that for one (1) year period following the Date of Termination . . . Employee will not directly or indirectly . . . (ii) solicit, aid, or induce any customer of the Company with whom Employee had material contact during the twenty-four (24) month period immediately preceding Employee's Date of Termination to

>purchase goods or services then sold by the Company from another person or entity, or assist or aid any other persons or entity in identifying or soliciting any such customer, or (iii) otherwise interfere with the relationship of the Company with any of its employees, customers, vendors, agents, or representatives.

Filing 1 at 8; 11.[1]

The plaintiff started working for a new employer shortly after leaving Johnson Controls. He alleges that he "has solicited and would like to continue to solicit" customers with whom he had contact while employed by Johnson Controls. Filing 1 at 3. He asserts there are other clients of Johnson Controls with whom he had contact, but never actually did business. *See* filing 14-1 at 6. Johnson Controls sent the plaintiff a cease-and-desist letter upon learning that he solicited certain clients. *See* filing 1 at 13. The plaintiff filed this lawsuit, and this motion for preliminary injunction, to prevent further enforcement of the non-solicitation covenant.

## II. DISCUSSION

A preliminary injunction is an extraordinary remedy, and one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). When deciding whether to issue a preliminary injunction, the Court weighs the four *Dataphase* factors: (1) the probability that the movant will succeed on the merits, (2) the threat of irreparable harm to the movant, (3) the state of the balance between this harm and the injury that granting the injunction will

---

[1] The omitted portion of the clause relates to non-solicitation of Johnson Controls' employees.

inflict on other parties, and (4) the public interest. *Johnson v. Minneapolis Park & Recreation Bd.*, 729 F.3d 1094, 1098 (8th Cir. 2013) (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc)). The movant must show both a probability of success on the merits and irreparable harm, but a preliminary injunction will only issue after consideration of all the factors. *E.g.*, *MPAY Inc. v. Erie Custom Comput. Applications, Inc.*, 970 F.3d 1010, 1016 (8th Cir. 2020); *Beber v. NavSav Holdings, LLC*, Nos. 23-2965, 23-2967, 2024 WL 4353525, at *6 (8th Cir. Oct. 1, 2024); *Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994).

### 1. Likelihood of Success

A showing of a likelihood of success on the merits does not singularly control, but receives substantial weight, in the Court's analysis. *See Cigna Corp. v. Bricker*, 103 F.4th 1336, 1343 (8th Cir. 2024). A movant shows a likelihood of success when he demonstrates a "fair chance," not necessarily "greater than fifty percent," that he will ultimately prevail under applicable law. *Id.*

The plaintiff argues that the non-solicitation covenant in his employment contract is overly broad and therefore unenforceable. Under Nebraska law,[2] partial restraints of trade, such as non-solicitation covenants, may be enforceable when they are ancillary to an employment contract and are apparently necessary to afford fair protection to the employer. *See Gaver v. Schneider's O.K. Tire Co.*, 856 N.W.2d 121, 127 (Neb. 2014). In determining whether such a covenant is valid, a court considers whether the restriction is

---

[2] When the parties do not raise a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits. *See BBSerCo, Inc. v. Metrix Co.*, 324 F.3d 955, 960 n.3 (8th Cir. 2003).

(1) reasonable in the sense that it is not injurious to the public, (2) not greater than is reasonably necessary to protect the employer in some legitimate interest, and (3) not unduly harsh and oppressive on the employee. *E.g., Aon Consulting, Inc. v. Midlands Fin. Benefits, Inc.*, 748 N.W.2d 626, 638 (Neb. 2008).

Non-solicitation covenants are generally aimed at preserving an employer's goodwill, confidential information, and trade secrets. *See Gaver*, 856 N.W.2d at 130. The employer has a legitimate interest in preventing unfair competition where an employee has substantial personal contacts with the employer's customers, develops goodwill with those customers, and siphons away the goodwill under circumstances where the goodwill belongs to the employer. *Id.* (citing *Aon Consulting*, 748 N.W.2d at 638).

The validity of a covenant not to compete aimed at preventing a former employee from unfairly appropriating customer goodwill is no greater than reasonably necessary "only if it restricts the former employee from working for or soliciting the former employer's clients or accounts with whom the former employee actually did business and ha[d] personal contact." *H&R Block Tax Servs., Inc. v. Circle A Enters.*, 693 N.W.2d 548, 554 (Neb. 2005) (quoting *Polly v. Ray D. Hilderman & Co.*, 407 N.W.2d 751, 757 (Neb. 1987)) (alteration in original). This test is applied strictly. *Id.* But a valid nonsolicitation covenant need not say those words exactly. *See Prof. Bus. Servs. Co. v. Rosno*, 680 N.W.2d 176, 181 (Neb. 2004).

The plaintiff does not appear to dispute that Johnson Controls has a legitimate interest in protecting its customer goodwill. *See* filing 7 at 4. Rather, the plaintiff argues that the non-solicitation covenant is overly broad in two respects: (1) the final phrase in the covenant prevents the plaintiff from "otherwise interfere[ing]" with Johnson Controls' customers, and (2) the term

4

"material contact" would prevent the plaintiff from soliciting customers with whom he did not actually do business.

### (i) Otherwise Interfere

The plaintiff argues that the contractual provision prohibiting the plaintiff from "otherwise interfer[ing] with the relationship of the Company with any of its employees, customers, vendors, agents, or representatives" renders the entire non-solicitation clause overly broad and unenforceable. According to the plaintiff, the Court should interpret that contract provision as restricting *all of* the plaintiff's actions with *any of* Johnson Control's customers. But doing so would mean the more specific non-solicitation provision is superfluous, contrary to rules of contract construction. *See Davenport Ltd. P'ship v. 75th & Dodge I, L.P.*, 780 N.W.2d 416, 427 (Neb. 2010) (courts interpret contracts to give effect to all provisions and avoid rendering any provision meaningless).

Johnson Controls' inclusion of a catch-all provision in its non-solicitation covenant cannot reasonably be interpreted to mean what the plaintiff asserts. "Otherwise interfere" would necessarily *exclude* the interference specifically identified ("solicit, aid, or induce") in order to give effect to each contractual provision. The Court is not persuaded that the plaintiff is likely to be successful on the merits in this regard.

### (ii) Material Contact

The plaintiff also argues that the non-solicitation clause is unenforceable because it applies to customers with whom the plaintiff had "material contact." *See* filing 7 at 5. The plaintiff argues that the term "material contact" could apply to customers with whom the plaintiff did not actually do business or have

5

personal contact, and is therefore overbroad and void. *See Polly*, 407 N.W.2d at 757. The plaintiff effectively argues that valid non-solicitation covenants under Nebraska law *must* say, word-for-word, that an employee is barred from soliciting a former employer's customers "with whom he actually did business and had personal contact." *See* filing 7 at 4.

But the law is not so precise. The Nebraska Supreme Court held that a noncompete which included *all* of the employer's customers *could* be valid if the employer proved its allegation that the employee "had substantial contact with virtually all of" the employer's clients. *Rosno*, 680 N.W.2d at 181. An employer is not required to use magic words in drafting a non-solicitation covenant. While it may be *wise* to use the court-approved language, the fundamental inquiry is whether a non-solicitation covenant is reasonable, and whether it factually covers only customers with whom an employee had personal contact and actually did business. *See id.*; *Gaver v. Schneider's O.K. Tire Co.*, 856 N.W.2d 121, 130 (Neb. 2014).

The plaintiff asserts in a self-serving declaration that there were many customers of Johnson Controls "with whom [he] met but never did business." Filing 14-1 at 6. But the record presently before the Court fails to explain why an interaction like that would be "material." Merely rubbing elbows or incidentally interacting with clients wouldn't be embraced by any interpretation of the term "material." At this early stage of the proceedings, when the record has not been fully developed, the Court cannot say that the plaintiff has met his burden of showing that the non-solicitation agreement is broader than necessary. *See Cigna*, 103 F.4th at 1345. The plaintiff has not persuasively demonstrated that there are clients with whom he had "material contact," but did not actually do business.

2. OTHER FACTORS

Assuming without deciding that the plaintiff has shown irreparable harm by his alleged loss of opportunity,[3] *see Iowa Util. Bd. v. F.C.C.*, 109 F.3d 418, 426 (8th Cir. 1996), and that public policy weighs in his favor, the *Dataphase* factors indicate that a preliminary injunction is not appropriate for this case. The Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24. This balance demonstrates the futility of granting the plaintiff's requested relief.

The plaintiff has asked the Court to prohibit Johnson Controls from enforcing its contract during the pendency of the plaintiff's lawsuit. *See* filing 1 at 5. But the method of enforcement available to Johnson Controls at this particular juncture is to pursue its counterclaim (*see* filing 18). An antisuit injunction where, as described above, a defendant *may* have a claim, is not appropriate.

And, the effect of any injunction could ultimately be meaningless. The plaintiff has directed the Court to no authority—nor is the Court aware of any—permitting the Court to indemnify the plaintiff from liability for actions later determined to be in violation of a valid contract (or otherwise unlawful). The theory by which the plaintiff claims to be losing business opportunities is fear of potential liability for pursuing them—but the Court cannot do anything about that with a preliminary injunction. The requested relief cannot resolve

---

[3] Johnson Controls has requested leave to respond to additional allegations in the plaintiff's declaration, primarily related to the alleged threat of irreparable harm. *See* filing 17; filing 14-1 at 7. Because the Court did not rely on those allegations in this Order, Johnson Controls' motion is denied as moot.

these issues; only a final judgment on the merits can relieve the plaintiff of potential liability for wrongful conduct.

If Johnson Controls is successful at the conclusion of this lawsuit, it could potentially claw back any of its lost profits wrongfully obtained by the plaintiff, even if the Court issues a preliminary injunction in the plaintiff's favor. Johnson Controls has raised familiar theories of relief related to the plaintiff's conduct, including an asserted breach of a confidentiality agreement. *See* filing 13 at 2; filing 18. Those theories may relate to the same profits and clients subject to the non-solicitation covenant. *Id* If the plaintiff continues to solicit Johnson Controls' clients, he does so at his own risk. For these reasons,

IT IS ORDERED:

1. The plaintiff's motion for preliminary injunction (filing 5) is denied.

2. Johnson Controls' motion for leave to file an amended response (filing 17) is denied as moot.

Dated this 16th day of October, 2024.

BY THE COURT:

*John M. Gerrard*
John M. Gerrard
Senior United States District Judge